**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 10 2014, 10:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CLIFFORD M. DAVENPORT**
Davenport Law Offices
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

| | | |
|---|---|---|
| DARNELL JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A04-1402-CR-82 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

---

APPEAL FROM THE MADISON COUNTY CIRCUIT COURT 3
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1010-FC-550

---

**November 10, 2014**


**MEMORANDUM DECISION - NOT FOR PUBLICATION**


**FRIEDLANDER, Judge**

Darnell Johnson appeals the revocation of his probation and the execution of his previously suspended sentence. Johnson presents three issue for our review:

1. Did the trial court abuse its discretion when it permitted hearsay testimony during the probation revocation hearing?

2. Is there sufficient evidence to sustain the trial court's determination that Johnson violated his probation?

3. Did the trial court abuse its discretion when it revoked Johnson's probation and ordered Johnson to serve the balance of his previously suspended sentence?

We affirm.

On October 8, 2010, the State charged Johnson under Cause No. 48C01-1010-FC-366 (FC-366) with Count I, criminal confinement as a class C felony, and Count II, battery as a class A misdemeanor. On December 2, 2010, the State charged Johnson under Cause No. 48C01-1012-FC-939 (FC-939) with battery resulting in serious bodily injury as a class C felony. On July 25, 2011, Johnson entered into a plea agreement with the State that covered FC-366 and FC-939, as well as separate misdemeanor case. The terms of the plea agreement provided that Johnson would plead guilty to all charges in FC-366 and FC-939 and the misdemeanor case would be dismissed. The plea agreement further provided that any executed sentence under each FC-366 and FC-939 would be capped at four years. On August 22, 2011, the trial court sentenced Johnson in FC-939 to four years executed. In FC-366, the trial court sentenced Johnson to six years with two years suspended on Count I, and to one year executed on Count II. The court ordered the sentences in FC-366 to be served concurrently with each other, but consecutively to the sentence imposed in FC-939.

2

In February 2013, the cause was reassigned to the Honorable Judge Thomas Newman and given a new cause number—Cause No. 48C03-1010-FC-550 (FC-550). Johnson was released from the Indiana Department of Correction on September 11, 2013. On October 1, 2013, the State filed a notice of probation violation and subsequently filed an amendment thereto on October 14, 2013. A second amended notice of probation violation was filed on November 1, 2013. The alleged probation violation followed a urine drug screen that tested positive for the presence of cocaine and marijuana. A probation violation hearing was held on November 18, 2013, during which Johnson admitted to violating a condition of his probation, and the trial court ordered Johnson to submit to an evaluation. Following a hearing on December 2, 2013, Johnson was released back to probation and ordered to complete certain programs that were recommended upon his evaluation.

On January 2, 2014, the State filed a second notice of probation violation alleging that Johnson had committed the crime of class A misdemeanor battery. The trial court held a probation revocation hearing on January 27, 2014.

During the revocation hearing, Kimberly Smith testified that she was Johnson's girlfriend at the time and that on or about October 27, 2013, while at her residence, Johnson pushed her by her shoulders and grabbed her by the neck. Holly Brewer, Smith's friend, intervened and attempted to pull Johnson off of Smith. Johnson and Brewer started to scuffle. Smith then gathered her stuff and went outside, asking Brewer to follow her. Brewer made "some racist remarks" and the next thing Smith saw was Brewer's feet "flying up in the air." *Transcript* at 72. Johnson fled the scene.

3

Officer Michael Williams with the Anderson Police Department also testified at the probation revocation hearing. Officer Williams explained that while on duty, he was dispatched to Smith's residence in response to a report of a battery and that when he arrived, Brewer was standing out front complaining of pain to her elbow and her face. Over a defense hearsay objection, Officer Williams testified that Brewer told him that she tried to help Smith after Johnson grabbed her and that when she yelled that she was going to call the police, Johnson struck her a couple of times in the face, knocking her to the ground. Brewer continued, telling Officer Williams that she fled outside and when she turned to call the police, Johnson struck her in the face again, knocking her into a trash can. Officer Williams further testified that Brewer was visibly shaken and that she had red marks on her face.

Another witness, Karla Scruggs, Smith's neighbor, testified at the probation revocation hearing. Scruggs admitted that she did not see what transpired inside Smith's home between Johnson and Brewer, but testified as to what she saw happen outside the residence. According to Scruggs, Johnson was standing on the front porch when Brewer made a racist remark to Johnson and spit on Johnson. Scruggs said that after Brewer took a swing at Johnson, Johnson hit Brewer, causing her to fall back over a stroller. In his own defense, Johnson denied striking Brewer with a closed fist.

Based upon the testimony presented, the trial court found by a preponderance of the evidence that Johnson had violated a condition of his probation by committing battery. As a result, the trial court revoked Johnson's probation and ordered that he be

4

returned to the Department of Correction to serve the balance of his suspended sentence. Johnson now appeals.

1.

Johnson argues that the trial court abused its discretion in admitting hearsay evidence during his probation revocation hearing. Johnson's argument is based on the fact that Brewer, the victim of the alleged battery that served as the basis for the notice of probation violation, did not testify at the probation revocation hearing. The events giving rise to the alleged battery were related to the court by Officer Williams, who testified as to what Brewer told him upon his arrival on the scene on the night of the incident. Although Officer Williams's testimony concerning what Brewer told him may have constituted hearsay, this does not necessarily preclude the admission of such evidence during a probation revocation proceeding.

The trial court's decision to admit or exclude evidence in a probation revocation hearing is reviewed on appeal for an abuse of discretion. *Figures v. State,* 920 N.E.2d 267 (Ind. Ct. App. 2010). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

The United States Supreme Court has held that the Due Process Clause applies to probation revocation hearings. *Gagnon v. Scarpelli,* 411 U.S. 778 (1973) (citing *Morrissey v. Brewer,* 408 U.S. 471 (1972)). The due process rights of a probationer include: "written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to

5

confront and cross-examine witnesses, and a neutral and detached hearing body. . . ." *Cox v. State,* 706 N.E.2d 547, 549 (Ind. 1999).

Confrontation rights in the context of probation revocation are not as extensive as they are in criminal trials. *Reyes v. State,* 868 N.E.2d 438 (Ind. 2007). The Indiana Rules of Evidence, including those governing hearsay, do not apply in such proceedings. *See* Ind. Evidence Rule 101(c)(2). Additionally, the scope of the right to confrontation as defined in *Crawford v. Washington*, 541 U.S. 36 (2004), does not apply in such proceedings. *See Reyes v. State,* 868 N.E.2d 438. This, however, "does not mean that hearsay evidence may be admitted willy-nilly in a probation revocation hearing." *Reyes v. State*, 868 N.E.2d at 440.

Our Supreme Court has held that the substantial trustworthiness test is the most effective means for determining whether hearsay evidence should be admitted at a probation revocation hearing. *Reyes v. State*, 868 N.E.2d 438. Under this test, "'judges may consider any relevant evidence bearing some substantial indicia of reliability . . . includ[ing] reliable hearsay.'" *Reyes v. State*, 868 N.E.2d at 441 (quoting *Cox v. State*, 706 N.E.2d 547, 551 (Ind. 1999)). In other words, the substantial trustworthiness test requires that the trial court evaluate the reliability of the hearsay evidence. *Reyes v. State*, 868 N.E.2d 438. Ideally, the trial court should explain on the record why the hearsay is reliable and why that reliability is substantial enough to supply good cause for not producing live witnesses. *Id.* Our Supreme Court has held that a finding of substantial trustworthiness is the equivalent of a good-cause finding. *Id.*

6

While it is preferable for the trial court to explain on the record why the hearsay is reliable and why that reliability is substantial enough to supply good cause for not producing live witnesses, the absence of such explanation from the trial court in this case does not necessitate reversal. To be sure, we find that in the present case, the hearsay testimony presented by Officer Williams met the substantial trustworthiness test. Officer Williams responded to a report of a battery and noted that the Brewer was visibly shaken, appeared to have been in an altercation, and had red marks on her face. Brewer's physical condition was directly observed by Officer Williams and corroborated her statement to Officer Williams that she had been struck in the face. Furthermore, the admission of the hearsay testimony was harmless as it was cumulative of testimony from two other witnesses who confirmed there was a physical altercation between Johnson and Brewer, with one of the witnesses specifically testifying that she saw Johnson strike Brewer. The trial court did not abuse its discretion in admitting Officer Williams's testimony.

2.

Johnson argues that there is insufficient evidence to support the trial court's finding that he violated a condition of his probation. Specifically, the trial court found that Johnson had violated a condition of his probation by committing the offense of class A misdemeanor battery[1] against Brewer.

---

[1] Ind. Code Ann. § 35-42-2-1(b)(1), (c) (West, Westlaw current with all Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) ("a person who knowingly or intentionally . . . touches another person in a rude, insolent, or angry manner" and such "results in bodily injury to any other person" commits class A misdemeanor battery).

Probation is a matter of grace that confers conditional liberty; it is a favor, not a right. *Cooper v. State,* 917 N.E.2d 667 (Ind. 2009). The trial court sets the conditions of probation and is authorized to revoke probation if those conditions are violated. *Id.* The decision whether to revoke probation is committed to the trial court's sound discretion. *Id.* We review its decision for abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effects of the facts and circumstances before it or if it misinterprets or misapplies the law. *Bennett v. State*, 862 N.E.2d 1281 (Ind. Ct. App. 2007).

In determining if there is sufficient evidence to support a revocation of probation, we will consider only the evidence most favorable to the State along with all relevant inferences that can be drawn therefrom. *Richeson v. State*, 648 N.E.2d 384 (Ind. Ct. App. 1995), *trans. denied*. In a probation revocation proceeding, an alleged violation need only be proved by a preponderance of the evidence. *Id*.

The State called three witnesses at the probation revocation hearing. Officer Williams's testimony, which we found, *infra*, to be admissible in this context, related what Brewer told him when he arrived on the scene after having been dispatched in response to a reported battery. Officer Williams testified that Brewer told him she intervened in a physical altercation between Johnson and Smith and then Johnson hit her twice in the face while inside Smith's residence. Brewer also told Officer Williams that after she retreated outside, Johnson struck her again in the face. Brewer complained of pain to Officer Williams, and Officer Williams observed that Brewer was visibly shaken and had red marks on her face. Furthermore, Smith's testimony corroborated Officer

8

Williams's testimony in that she too testified that Brewer intervened when Johnson became physical with her and that she then witnessed a scuffle between Johnson and Brewer and then saw Brewer's legs fly up in the air. From Smith's testimony, a reasonable inference can be drawn that Johnson hit Brewer so hard that she was knocked off her feet. Scruggs also testified that she witnessed Johnson strike Brewer with such force that Brewer was knocked to the ground.[2] The evidence presented by these witnesses is more than sufficient to establish by a preponderance of the evidence that Johnson committed a class A misdemeanor battery on Brewer.

Johnson's argument on appeal is that he acted in self-defense, which he bases on the testimony of Scruggs that while outside on the porch, Johnson struck Brewer after she made a racial comment directed at Johnson and swung at him. A valid claim of self-defense is a legal justification for committing what would otherwise be a criminal act. *See Miller v. State*, 720 N.E.2d 696 (Ind. 1999). For a defendant to prevail on a claim of self-defense, he must present evidence that shows: (1) he was in a place that he had a right to be; (2) he did not provoke, instigate, or participate willingly in the violence; and (3) he had a reasonable fear of death or great bodily injury. *Bryant v. State*, 984 N.E.2d 240 (Ind. Ct. App. 2013), *trans. denied.*

We begin by noting that the evidence demonstrates that Johnson was the initial aggressor[3] and provoked violence when, inside Smith's home, he pushed Smith and

---

[2] Scruggs testified that she believed Johnson struck Brewer in self-defense after Brewer swung at him.

[3] Before an initial aggressor can assert a claim of self-defense, he or she must declare an armistice, i.e., withdraw from the encounter and communicate to the other person the intent to do so. *See Wilson v. State*, 770 N.E.2d 799 (Ind. 2002); Ind. Code Ann. § 35-41-3-2 (g)(3) (West, Westlaw current with all

9

grabbed her by the neck. Brewer intervened in this physical altercation in defense of Smith, and Johnson, in turn, struck Brewer. Scruggs did not witness the events that took place inside Smith's home. We also note that Brewer retreated outside to the front porch. Johnson did not retreat from the situation; rather, he prolonged it by following Brewer outside.

Furthermore, there is nothing in the record that even remotely indicates that Johnson had a reasonable fear of death or bodily injury. Johnson was the initial aggressor when he pushed Smith and grabbed her around her neck. When Johnson came to Smith's aid, Johnson struck her twice in the face, knocking her to the ground. After Brewer retreated to the front porch, Johnson followed her outside. To say that an attempted strike from Brewer while outside on the porch placed Johnson in fear of death or bodily injury strains credulity. There is no basis in the record that supports Johnson's claim of self-defense. As set forth above, the State's evidence establishes by a preponderance of the evidence that Johnson committed class A misdemeanor battery against Brewer.

3.

Johnson argues that the trial court abused its discretion in revoking his probation and ordering that he serve the balance of his suspended sentence. Specifically, Johnson contends that the trial court should have considered other alternatives to incarceration.

Where a trial court has exercised its grace by granting a defendant probation in lieu of incarceration, it has considerable leeway in deciding how to proceed where the

2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

10

defendant then violates the conditions of his probation. *Prewitt v. State*, 878 N.E.2d 184 (Ind. 2007). A trial court's sanction decision is not scrutinized too severely on appeal. *Id*. Thus, the sanction imposed by the trial court upon a finding of a probation violation is reviewed on appeal for an abuse of discretion. *Brandenburg v. State*, 992 N.E.2d 951 (Ind. Ct. App. 2013), *trans. denied*. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. Although the court has several alternative sanctions it may impose where it has found that a defendant has violated his probation, one of those sanctions is to order execution of the sentence that was previously suspended. *Id*.; *see also* Ind. Code Ann. § 35-38-2-3(h) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly).

Here, Johnson violated his probation by committing another criminal offense. The record also demonstrates that Johnson has not fared well in the past when placed on probation or given other lenient treatment. In fact, in the present case, a prior notice of probation violation was filed against Johnson because he used illicit drugs (i.e., cocaine and marijuana) in violation of the conditions of his probation. After an evaluation, the trial court released Johnson back to probation and ordered that he complete certain programs. Shortly thereafter, the instant notice of probation violation was filed against Johnson. Johnson's lengthy criminal history demonstrates that he has not learned from his prior contacts with the criminal justice system. Under the circumstances presented here, particularly Johnson's violent character and inability to abide by the rules of society, we cannot say that the trial court abused its discretion when it revoked Johnson's

11

probation and ordered that he serve the remaining previously suspended portion of his sentence.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.